# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| WEST BEND MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | No. 17 C 2598 |
| v. | ) ) | Judge Thomas Durkin |
| ZURICH AMERICAN INSURANCE COMPANY, | ) ) ) | Magistrate Judge Jeffrey Cole |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

This case stems from a lawsuit between construction worker, Daniel Fleck, and construction company, W.E. O'Neil. Mr. Fleck sued WEO when he was injured on a WEO project. WEO tendered defense of the suit to its primary insurer, the plaintiff in this case, West Bend. Mr. Fleck won the suit and gained a judgment of just over $2 million. After the waiver of the worker's compensation lien, the recoverable amount was $1,739,908.26, which West Bend paid. West Bend then went to the defendant here, Zurich, secondary insurer, to recover the amount over the policy limit of $1 million, claiming Zurich was next in line to pony up. Zurich refused, saying that West Bend ought to have settled the case within the million-dollar limit and that it was bad faith on its part not to have. [Dkt. #20, at 1-2].

There is a discovery dispute, of course – "the bane of modern litigation." *Rossetto v. Pabst Brewing Co., Inc.,* 217 F.3d 539, 542 (7th Cir. 2000). West Bend asked for the documents in Zurich's *Fleck* case claim file and communications with attorney, John Moroney. Zurich was monitoring the progress of the case and retained the firm of Franco & Moroney for that purpose. Zurich, as is usually the case, made sweeping claims of attorney-client privilege and work product,

and produced only heavily redacted documents. The claims were exaggerated, proving once again

that excessive claims of privilege are all too commonplace in modern litigation and that they are

indiscriminately and improperly used "on documents that do not truly qualify for protection." *Towne*

*Place Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, 284 F. Supp. 3d 889 (N.D. Ill. 2018). *See also*

*Dietz & Watson, Inc. v. Liberty Mut. Ins. Co.*, 2015 WL 2069280, at *6 (E.D. Pa. 2015)*; Falin v.*

*Condo. Ass'n of La Mer Estates, Inc.*, 2012 WL 760831, at *1 (S.D. Fla. 2012 );*Employer's*

*Reinsurance Corp. v. Clarendon Nat. Ins. Co.*, 213 F.R.D. 422, 430 (D. Kan. 2003).

West Bend has moved to compel production of clean documents and any withheld

documents, arguing that "at issue" waiver applies. After an initial hearing on this dispute, Zurich had

more than a moment of self-realization and "reconsidered many of the redactions made in its

Privilege Log." It then produced many previously withheld or redacted documents. And so, of the

original 200 or so documents at issue [Dkt. # 20, at 12-38], only about 80 remain.

Under Illinois law, an insurer has a duty to settle in good faith on behalf of its insured, which,

arises from the covenant of good faith and fair dealing implied in an insurance contract. *Iowa*

*Physicians' Clinic Med. Found. v. Physicians Ins. Co. of Wisconsin*, 547 F.3d 810, 812 (7th Cir.

2008). As the Seventh Circuit has explained, in the paradigmatic duty-to–settle case, there are three

parties:

> the injured third party; the insured, who is being sued; and the insurer, who controls
> the insured's defense. If the third party sues the insured for an amount above the
> policy limit and seeks a settlement at the upper limit of the policy, a conflict of
> interests arises. In this situation, the insurer may be tempted to decline the settlement
> offer, no matter how good the deal is for the insured, and go to trial. It makes no
> difference to the insurer's bottom line whether the case is settled or the jury awards
> astronomical damages; in either event it will pay out only the maximum on the
> policy. And if the case goes to trial, at least there's a shot that they will win and pay
> nothing. The insured, on the other hand, calculates the risks of trial differently
> because he will be stuck paying anything above the policy limit.

*Id.*

As such, the insurer is in a heads-I-win-tails-you-lose position. *See, e.g.,Twin City Fire Ins. Co. v. Country Mut. Ins. Co.*, 23 F.3d 1175, 1179 (7th Cir. 1994). To even things up, and "combat the temptation to ignore an insured's interest . . . llinois courts have recognized that an insurer has a 'duty to act in good faith in responding to settlement offers,' and if that duty is breached the insurer is on the hook for the entire judgment, regardless of the policy limit." *Iowa Physicians'*, 547 F.3d at 812. Here, as West bend describes it, the temptation not to settle would have stemmed from Zurich being on the hook if the recovery amount exceeded West Bend's policy limit. And so, it is not a complete surprise that Zurich charged West Bend with bad faith in its counterclaim.

But that doesn't mean Zurich has waived its attorney-client privilege. Black letter law on at-issue waiver is fairly clear:

> To waive the attorney-client privilege by voluntarily injecting an issue in the case, a defendant must do more than merely deny a plaintiff's allegations. The holder must inject a new factual or legal issue into the case. Most often, this occurs through the use of an affirmative defense.

*Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1098 (7th Cir. 1987). While *Lorenz* dealt with Indiana law, there is nothing in Illinois law to suggest the general principles are any different. The Illinois Supreme Court recognized that both the attorney-client privilege and the work-product privilege may be waived as to a communication put "at issue" by a party who is a holder of the privilege in *Waste Management, Inc. v. Int'l Surplus Lines Ins. Co. ,* 144 Ill.2d at 199–200, 579 N.E.2d 322 (1979). Since then, courts have applied the concept by asking whether the sought-after communications were actually placed 'at issue' or whether they were simply relevant to the dispute. *See, e.g., Edgewater Med. Ctr. v. Rogan*, No. 04 C 3579, 2010 WL 2711448, at *9 (N.D. Ill. July 6,

2010); *Western States Ins. Co. v. O'Hara*, 357 Ill. App. 3d 509, 520–21, 828 N.E.2d 842 (4th Dist.

2005); *Shapo v. Tires 'N Tracks, Inc.*, 336 Ill. App. 3d 387, 394, 752 N.E.2d 815 (1st Dist. 2002);

*Hayes v. Burlington No. and Santa Fe Railway Co.,* 323 Ill.App.3d 474, 752 N.E.2d 470 (2001);

*Chicago Meat Processors, Inc. v. Mid-Century Ins. Co.*, No. 95 C 4277, 1996 WL 172148, at *4

(N.D. Ill. Apr. 10, 1996). Most pertinent of such cases here is *Western States,* where the Illinois

appellate court held that where an insurer put at issue whether it had settled a claim in good faith,

the insured was entitled to discovery of the insurers' communications with the law firm that

represented the insurer during the settlement process. 357 Ill.App.3d 509, 520–21, 828 N.E.2d 84.

Taking West Bend at its word, we can't see how Zurich has waived its attorney-client

privilege or work product protection. As West Bend puts it:

> following the exhaustion of the West Bend Primary Policy, the Zurich Commercial
> General liability Policy was next in line to cover the Fleck judgment, but Zurich
> refused to pay any part of the Fleck judgment because it alleged that West Bend
> breached the duty to settle.
>
> In Illinois, the duty to settle arises when a claim has been made against the
> insured and there is a reasonable probability of recovery in excess of the policy
> limits; a reasonable probability of a finding of liability against the insured; and a
> demand to settle within the policy limits. By raising bad faith in its affirmative
> defense, Zurich has placed at issue the probability of a finding of liability against
> [WEO] and the probability of an excess judgment. Also at issue are the settlement
> negotiations between the parties in the Fleck case.

[Dkt. #20, at 5-6]. So, as West Bend sees it, it is West Bend's good faith, or lack thereof, in deciding

not to settle that is at issue. What is strikingly absent from West Bend's brief is any explanation of

how Zurich and its attorney had anything to do with West Bend's decision not to settle. The

settlement negotiations were between West Bend and Mr. Fleck. It was West Bend's decision not

to settle. The fact that Zurich's counsel "monitored" the proceedings is meaningless unless he had

4

some input into West Bend's decision – and there's nothing to indicate he did. And that means, West Bend hasn't established any at-issue waiver on the part of Zurich.

The cases West Bend relies on to support its waiver theory are of no help to it here. One, *Sullivan v. Alcatel-Lucent USA, Inc.*, No. 12 C 7528, 2013 WL 2637936, at *9 (N.D. Ill. June 12, 2013), isn't even an insurance case. The other, *Prisco Serena Sturm Architects, Ltd. v. Liberty Mut. Ins. Co.*, No. 94 C 5716, 1996 WL 89225, at *1 (N.D. Ill. Feb. 27, 1996), clearly demonstrates that it is West Bend's good or bad faith that are the issue. The court there explained that:

> where allegations of bad faith exist against an insurance company, the plaintiff insured is entitled "to know the substance of the investigation, the information available and used to make a decision, and the evaluations and advice relied upon for the decision." All of this relevant information is in the possession of the insurer, and the insurance claims file is likely to be the sole or primary source.

*Prisco Serena*, 1996 WL 89225, at *1. Again, the good faith duty to settle was West bend's, not Zurich's.

West Bend makes two additional arguments, neither of which is developed to an extent that they can accepted. *See Sanchez v. City of Chicago*, 700 F.3d 919, 934 (7th Cir. 2012)*; Jenkins v. White Castle Management Co.,* 2014 WL 3809763, 2 (N.D.Ill.2014). It claims that while Mr. Moroney was – again, as West bend puts it – monitoring the *Fleck* case and providing reports on pretrial and trial activities, he was acting as a claims handler and not an attorney, meaning the privilege would not apply. [Dkt. #20, at 6]. West Bend cites no case law to support its position, and in any event, the descriptions of the documents suggest that Mr. Moroney was advising Zurich on its options should West bend refuse to settle the *Fleck* case and the filing of bad faith claims against West Bend. As such, there is nothing to suggest Mr. Moroney was acting as a mere "claims adjuster,

claims process supervisor, or claims investigation monitor." *Slaven v. Great Am. Ins. Co.*, 83 F.

Supp. 3d 789, 794 (N.D. Ill. 2015).

West Bend's other assertion is that any documents from prior to December 2016 cannot be

protected by the work product doctrine because that is when Zurich advised West Bend that it would

not pay any part of the *Fleck* judgment. But West Bend itself points out that Zurich actually raised

the specter of West Bend acting in bad faith in letters to West Bend as early as October 2014. [Dkt.

#20, at 7]. As such, arguably, there was "some articulable claim, *likely* to lead to litigation" and the

documents at issue could "fairly be said to have been prepared or obtained because of the prospect

of litigation." *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010)(emphasis

in original).

One further point needs to be made. The parties claim that they complied with the dictates

of Local Rule 37.2 by having two discussion on January 10 and 11, 2018 about these issues. It is

troubling, then, that after those discussions, counsel for West Bend filed a motion to compel that

seemingly flies in the fact of applicable law on at-issue waiver and counsel for Zurich, in the wake

of the motion and upon direction from the court, apprised themselves of applicable caselaw and

slashed Zurich's privilege claims by 80%. Local Rule 37.2 mandates, not discussions, but "good

faith" discussions. Chatting for a bit about a dispute and maintaining an untenable position at worst

or a tenuous position at best, is not engaging in a good faith meet and confer.

The purpose of Local Rule 37.2 is "[t]o curtail undue delay and expense in the administration

of justice." The Rule ultimately rests on what Justice Holmes called the shortness of life and the

reality that there is a never ending procession of cases that compete for judicial attention. If the

parties can resolve their issue, the court's time is saved and available to be directed to those cases

that present issues that cannot be amicably resolved. Each hour needlessly spent on a dispute is an hour squandered. *See Chicago Observer, Inc. v. City of Chicago,* 929 F.2d 325, 329 (7th Cir. 1991) ("Litigation is costly not only for the litigants but also for parties in other cases waiting in the queue for judicial attention."). This is a problem that the Seventh Circuit has repeatedly adverted to. *See, e.g., Otto v. Variable Annuity Life Insurance Co.,* 134 F.3d 841, 854 (7th Cir. 1998); *Channell v. Citicorp Nat. Services, Inc.,* 89 F.3d 379, 386 (7th Cir. 1996); *Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073, 1077 (7th Cir. 1987).

The Rule benefits not just the court and other litigants, but ultimately, the parties as well. As the resolution of discovery disputes is committed to the court's broad discretion, *Kuttner v. Zaruba*, 819 F.3d 970, 974 (7th Cir. 2016); *James v. Hyatt Regency Chicago*, 707 F.3d 775, 784 (7th Cir. 2013), it behooves parties to work things out on their own. Discretion denotes the absence of hard and fast rules. *Langnes v. Green*, 282 U.S. 531, 541 (1931). Being a range, not a point, discretion allows two decision-makers –on virtually identical facts – to arrive at opposite conclusions, both of which constitute appropriate exercises of discretion. *Compare United States v. Boyd,* 55 F.3d 239 (7th Cir. 1995) with *United States v. Williams,* 81 F.3d 1434 (7th Cir. 1996). A party that steadfastly maintains its position without budging – as the parties essentially did during their "meet and confers" here – could be "right", but find itself on the losing side, and properly so, when the matter comes before the court and the court's discretion leads it to accept the other side's "right" position. A negotiated outcome is more likely to give both sides at least a somewhat satisfactory resolution. At least a somewhat satisfactory resolution and one that does not require judicial intervention as the Local Rule and the Federal Rules of Civil Procedure envision.

Accordingly, any future discovery motion must contain a detailed, joint statement of the

parties' efforts to resolve their disputes over each of the document requests at issue, along with their final positions, supported by pertinent authority, on each request that remains in dispute. *See Autotech Techs. Ltd. P'ship v. Automationdirect.Com, Inc.*, No. 05 C 5488, 2007 WL 2713352 (N.D. Ill. Sept. 12, 2007); *O'Toole v. Sears, Roebuck & Co.*, 302 F.R.D. 490, 491 (N.D. Ill. 2014).

## CONCLUSION

For the foregoing reasons, the plaintiff's motion to compel [Dkt. #20] is denied.

**ENTERED:** _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 4/11/18